# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

(No. 13786.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RALPH BOYKIN, Plaintiff in Error.

*Opinion filed April 21, 1921—Rehearing denied June 9, 1921.*

1. STATUTES—*when statute purporting to amend original act will be construed to amend the act as amended.* Where an amendment of a statute takes the place of the original enactment and is considered as a continuance of so much of the law as is left unchanged in form or substance, a subsequent statute, although it purports to amend the original act, is to be construed, in accordance with the intent of the legislature, as operating on the prior amendment, and effect will be given to the subsequent amendment.

2. CONSTITUTIONAL LAW—*act of 1917 amending act relating to pandering is not void because it purports to amend the act of 1908.* The act of 1917 amending the act relating to pandering is not void because it purports to amend the act of 1908 even though the provisions of that act were technically repealed by implication by the amendment of 1909, as said provisions were re-enacted by the act of 1909 and never ceased to be the law on the subject of pandering at any time after their enactment in 1908, and they may properly be referred to as the act of 1908 as well as the act of 1909.

3. CRIMINAL LAW—*municipal court has jurisdiction of first offense of pandering.* The municipal court of Chicago has jurisdiction of the first offense of pandering, and the mere possibility that

the proof may show that the defendant has previously been convicted of pandering does not deprive it of jurisdiction, but if there has been a former conviction for such offense the prosecution must be by indictment and in a court of record having jurisdiction to impose a penitentiary sentence.

4. SAME—*when an indictment must allege former conviction.* Every fact necessary to sustain a sentence imposed by a court in a criminal case must be alleged in the information or in the indictment, and an indictment under which it is sought to impose a higher penalty by reason of a previous conviction must allege the fact of such conviction.

5. SAME—*information may be positively verified by officer to whom confession is made.* An information charging pandering, which is positively verified by the officer making the affidavit, is not insufficient because the officer acquired his knowledge from the voluntary confession of the defendant and had no independent knowledge of the facts.

6. SAME—*when motion for bill of particulars is made in proper time.* Where trial is set for the day on which a motion to quash is considered, the defendant may move for a bill of particulars immediately after the motion to quash and before the case is called for trial.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge,. presiding.

ELLIS & WESTBROOKS, (RICHARD E. WESTBROOKS, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On September 30, 1920, an information was filed in the municipal court of Chicago by a police officer of Chicago charging plaintiff in error, Ralph Boykin, with the offense of pandering. The charging. part of the information is, "that Ralph Boykin heretofore, to-wit, on the

29th day of September, A. D. 1920, at the city of Chicago aforesaid, did then and there unlawfully and knowingly, without lawful consideration, take, accept and receive money from one Grace LaMont, a female person, from the earnings of her prostitution, for providing, procuring and furnishing another person for the purpose of illicit sexual intercourse with the said Grace LaMont, contrary to the form of the statute in such case made and provided and against the peace and dignity of the People of the State of Illinois." The information was signed by James W. Coleman and was verified by his affidavit stating "that he has read the foregoing information by him subscribed and that the same is true." Plaintiff in error had previously been arrested by the officer without warrant, and when taken before the court on the 6th of October, 1920, filed his motion to quash the information and to dismiss the proceedings on the ground that the amendment of 1917 to the act of 1908, under which he was prosecuted, was unconstitutional and void because said amendment amended an act which did not exist, the act of 1908 having been repealed by implication by the act of 1909, which also amended the act of 1908. It was further urged in the motion to quash, that the municipal court has no jurisdiction of the offense of pandering, if this act is valid, because it is an offense that must be prosecuted by indictment, as the punishment for the offense charged may be by imprisonment in the penitentiary if it should appear on the trial that the accused had been previously convicted of pandering, and that therefore prosecution by information was a violation of sections 2 and 8 of article 2 of the constitution of 1870 and of the fifth amendment to the Federal constitution. The motion to quash was considered and overruled by the court on October 20, 1920. Plaintiff in error then excepted to the ruling of the court and moved that a bill of particulars should be furnished him because the information did not state the amount or character or value of the money

received by him, and did not state the names of any persons from whom Grace LaMont so earned money, or the name of any person provided, procured and furnished her by him for the purpose of illicit intercourse, or any other facts or terms equivalent thereto. The court overruled this latter motion on the ground that it had not been raised at the proper time and immediately proceeded to the trial, and plaintiff in error saved his exceptions. Plaintiff in error signed a written waiver of trial by jury, and the trial was before the court without a jury. At the conclusion of the evidence the court found the defendant guilty in manner and form as charged in the information. Motions for a new trial and in arrest of judgment were overruled by the court, and the court sentenced the defendant to the house of correction of the city of Chicago for one year and to pay a fine of $300 and costs of prosecution. The record is brought to this court for review on writ of error.

It appears from the evidence that Grace Ruud, known by the name of Grace LaMont, was a girl seventeen years of age. On September 29, 1920, she was, and for four months had been, occupying room 212 at the Carleon Hotel, at the corner of Twenty-second street and Wabash avenue, in the city of Chicago, and was not engaged in any legitimate occupation during that time but was engaged in prostitution, or selling her body to men for money, as she expressed it. On said date officers James W. Coleman and Peter J. Bernacki, of the second precinct of Chicago, were called to the hotel, where they arrested Miss LaMont on the charge of stealing a watch from a guest of the hotel. She pointed out the plaintiff in error, William Turner, Joseph Sullins and William Tyler, four bell-boys who worked at the Carleon Hotel, and the officers took all four of them and Miss LaMont to the Harrison street police station and there kept them under guard or imprisonment, for investigation. Miss LaMont was not prosecuted for the theft of the watch or for any other charge, so far as the

record shows. She testified that she received $5, and sometimes $10, for entertaining men in illicit intercourse, and that she paid the bell-boys $2 of every $5 that she so received when they procured and brought to her a patron in her occupation, and that she so divided with Boykin ten or fifteen times,—$2 each time he procured a patron for her,—and that he also had sexual intercourse with her. It also appears from the testimony of Miss LaMont that she paid the proprietor of the hotel $15 per week for her room out of the money that she earned in illicit intercourse, and that she was taken to the Carleon Hotel by a bell-boy of the Lexington Hotel, and that that bell-boy had an understanding with the clerk who permitted her to register, as to the business that she had come to the hotel to follow, and that she was at no time asked to leave the hotel by the proprietor. She occupied the room alone, which was a room with bath, and had no trunk but just a hand bag as baggage. There were about eighty-five rooms in the hotel, and many of the occupants of the rooms of the hotel were women, but there is no evidence that any of the other women were engaged in the same occupation as Miss LaMont. Both of the officers testified positively, in substance, that at the police station Miss LaMont said to them, in the presence of plaintiff in error, that he (Boykin) had brought men to her room at that hotel on numerous occasions and that she had had intercourse with the men, for which she received $5, and that she paid Boykin $2 out of every $5 that she received, and that they asked Boykin, in her presence, if that was the truth, and he said it was. Officer Bernacki further testified that he took Boykin into the lieutenant's room, and that in the presence of Miss LaMont he said that he knocked at room 212 and took Grace to the room where Sheean was, (the guest whose watch was stolen,) and that he received $2 or $4 "out of $10 she got from Sheean from intercourse."

Plaintiff in error testified that he had been employed at the Carleon Hotel since April, 1920, as a bell-boy and assistant clerk, and that his duties were to wait on guests, serve orders and to rent rooms at times when the clerk was not there; that he only knew Grace LaMont when he saw her, never had any talk or conversation with her, never received at any time any money from her for procuring or bringing to her room men for illicit intercourse, never procured or took any men to her room or directed any men to her room, and never received any money from her whatever, except a ten-cent tip for carrying to her on one occasion a twenty-five cent chocolate ice cream soda, and that he knew nothing about her business. He also positively denied ever stating or admitting to the officers at the police station that he had received from her any money for procuring and taking men to her room or taking her to Sheean's room. The two bell-boys, William Turner and Joseph Sullins, testified that when they were all taken to the police station the two officers examined each one of the bell-boys separately in the presence of Grace LaMont and then all of them were examined together in her presence; and that Boykin at no time there stated or admitted that he had received money from Grace LaMont for procuring or taking men to her room for illicit intercourse but that he positively denied that he had ever done so, and that they (the two witnesses) never stated or admitted that they, or either of them, had been guilty of such conduct but positively denied that they, or either of them, had been guilty of such conduct. They also testified that the officers threatened them and called them vile names but did them no personal violence, and that officer Coleman told them, when he and Bernacki were taking them to the cells, that if they would get up $200 for him he would throw their cases out of court. The record shows Boykin had never been arrested on any other charge, and he proved good reputation as a "peaceful and law-abiding citizen" by two witnesses,

Officer Bernacki, in rebuttal, testified that he was with officer Coleman at the police station when the bell-boys were led back to their cells and that he did not hear Coleman say anything about money to the defendant. He further testified that Joseph Sullins said to the officers, in the presence of the other three bell-boys, that he would give them $200 if they would get him out of this trouble and that they would never see him again, which latter testimony was denied by Sullins, and Turner also denied that he made any such statement.

The Pandering act of 1908 consisted of three sections. Section 1 defined the crime and fixed the punishment at imprisonment in the county jail or house of correction for a period of not less than six months nor more than one year, or by a fine of not to exceed $1000, or both, and upon conviction for a second offense under the act punishment was fixed at imprisonment in the penitentiary for a period of not less than one year nor more than five years. Section 2 provided, in substance, that any such female referred to in the first section should be a competent witness, in any prosecution under the act, to testify to all matters, including conversations with the accused, or by him with third persons in her presence, whether she was married to the accused or otherwise. Section 3 provided that the act or state of marriage should not be a defense to any violation of the act. (Laws of 1907-1908, p. 47.)

The act of June 12, 1909, was an act that purported to amend the act of 1908 in relation to pandering, including its title. Section 1 of the amendatory act describes the act of 1908, and concludes with the statement that said act, including its title, shall "be amended so as to read as follows." The next section is numbered [1] 2 and describes or recites the acts that shall constitute pandering and provides for the punishment of the same. This section includes all of section 1 of the act of 1908, which defines pandering, and also enlarges the definition of pandering as

298-2

given in the act of 1908 by adding thereto a number of
other acts by persons that shall constitute pandering. The
penalty under this section is imprisonment in the county
jail or house of correction for a period of not less than
six months nor more than one year and a fine of not less
than $300 and not to exceed $1000, and upon conviction of
any subsequent offense the punishment shall be imprison-
ment in the penitentiary for a period of not less than one
nor more than ten years. The next section of the act is
numbered 2 and is an entirely new section, and provides
that "it shall not be a defense to a prosecution for any of
the acts prohibited in the foregoing section that any part
of such act or acts shall have been committed outside this
State, and the offense shall in such case be deemed and al-
leged to have been committed and the offender tried and
punished in any county in which the prostitution was in-
tended to be practiced, or in which the offense was consum-
mated," etc. The next section is numbered 3, and contains
all of section 2 of the act of 1908 on pandering, and adds
thereto the words, "whether called as a witness during the
existence of the marriage or after its dissolution." The
last section is numbered 4 and is a literal copy of sec-
tion 3 of the act of 1908, without any words whatever
added. (Laws of 1909, p. 180.)

The act of June 25, 1917, purports to amend section 2
and the title of the act of 1908 relating to pandering. Sec-
tion 2 of the act contains the exact language of section [1]
2 of the act of 1909 amending the act of 1908, which de-
fines pandering and fixes the penalty thereof, with a very
slight modification. Said section also includes other acts of
persons the commission of which shall render them guilty
of pandering, which acts are as follows: "or any person
who shall knowingly, without lawful consideration, take,
accept or receive any money or other thing of value from
any female person from the earnings of her prostitution,
or any person who shall, directly or indirectly, take, re-

ceive or accept money or other thing of value for providing, procuring or furnishing for another any person for the purpose of illicit sexual intercourse." The act of 1917 also slightly amends the title of the act of 1908. (Laws of 1917, p. 349.)

It will be seen from the foregoing that the amended act of 1909 purports to be simply an amendment of the law of 1908. It in reality was a complete revision of the law of 1908, retaining the entire substance of the law of 1908 with a slight change as to the penalty or punishment for pandering and containing also an added section and other added provisions. This revision of the law relating to pandering found in the law of 1909 stated the entire law on the subject in Illinois as it existed on July 1, 1909, and is nothing more than the law of 1908 relating to pandering with amendments thereto changing somewhat the penalty for pandering and adding other provisions. All provisions of the 1908 law that were retained in the revision of 1909 were technically repealed by implication by the amendment of 1909, and at the same instant that they were repealed were re-enacted again by the amendment of 1909, and the provisions of the act of 1908 so retained in the 1909 amendment never ceased to be the law on the subject of pandering for any instant of time since their enactment in June, 1908, and they are properly referred to as the law or act of 1908 as well as the law or act of 1909. In reality the provisions of the law of 1908 retained in the revision of 1909 were at no time repealed,—that is, they at no time ceased to be the law and the law of 1908. (1 Sutherland on Stat. Const. sec. 237.) The act of 1917 simply added another amendment to section 1 of the act of 1908, which became section [1] 2 in the revision of 1909 and section 2 in the law of 1908, and the legislature properly termed or referred to the amendment of 1917 as an amendment of the law of 1908. It would have been more accurate, perhaps, to have referred to the amendment of

1917 as an amendment of section 2 of the law of 1908 as amended in June, 1909, but the intent of the legislature is clear when all the acts are considered, and they all are valid laws of 1908 as amended.

"An amendment of a statute by a subsequent act operates precisely as if the subject matter of the amendment had been incorporated in the prior act at the time of its adoption, so far as regards any action had after the amendment is made, for it must be remembered that an amendment becomes a part of the original act, whether it be a change of a word, figure, line or entire section or a recasting of the whole language." (Black on Interpretation of Laws, sec. 131.) It is also stated in 26 Am. & Eng. Ency. of Law, (2d ed.) 704, that where an amendment is considered as a continuance of so much of the law as is left unchanged in form or substance, or as having taken the place of the original enactment and as incorporated therein for all purposes, including the amendments, a subsequent statute purporting further to amend the original act is to be construed in accordance with the intent of the legislature as operating on the prior amendment, and effect will be given to it. The foregoing authorities have been sanctioned and followed by this court and by a number of other courts of this country. .(*Village of Melrose Park* v. *Dunnebecke,* 210 Ill. 422; *Baker* v. *Shinkle,* 249 id. 154.) The act of 1917 purporting to amend the act of 1908 did, in fact, amend the act aforesaid or the act as amended in 1909, which latter act at that time had an actual existence, and still has, as amended in 1917. The amendment of 1917 was not void or unconstitutional for the reason given in the plaintiff in error's motion to quash the information, and the court properly held against such contention. The validity and constitutionality of the act have been several times upheld by this court. *People* v. *Braun,* 246 Ill. 428; *People* v. *Jacobson,* 247 id. 394; *People* v. *VanBever,* 248 id. 136.

The municipal court had jurisdiction of this offense. That court is a court of limited jurisdiction, but it has jurisdiction of offenses committed within the boundaries of the city which are prosecuted by information and punishable by fine and imprisonment otherwise than in the penitentiary, and this is not questioned by plaintiff in error. His contention is, that under the information in question he might have been convicted of a second offense if the proof had shown that he had been previously convicted of pandering. We cannot accede to this contention. Every fact necessary to sustain a sentence imposed by a court in a criminal case must be alleged in the information or in the indictment, and an indictment under which it is sought to impose a higher penalty by reason of a previous conviction must allege the fact of such conviction. (1 McClain on Crim. Law, sec. 28, p. 28.) It is neither proved in this case nor charged by plaintiff in error that he was ever convicted of pandering, or of any other offense, previous to the filing of the information. In fact, the record shows that he never was previously convicted of or charged with any offense. It is true that if the information had properly alleged a conviction of a former offense of pandering the municipal court would not have had jurisdiction, as the prosecution would have had to be by an indictment and tried in a court of record having jurisdiction to impose the penalty of imprisonment in the penitentiary. But that is not the fact here, where the misdemeanor charged is the first offense of pandering, and there is no reason for holding that the municipal court did not have jurisdiction. This court has already entertained convictions in the municipal court for pandering in a number of cases, although the question now presented was not raised in those cases. *People* v. *Jacobson, supra; People* v. *VanBever, supra; People* v. *Braun, supra.*

It is also contended that the information is fatally defective because it does not apprise plaintiff in error of the

precise offense of which he was tried, and that the wording of the statute is not sufficiently broad to uphold the information. This contention is without merit. It was not raised on the motion to quash and is therefore not properly presented under the motion in arrest. We hold that the information is sufficient in any event, and that the motion in arrest of judgment should be overruled.

The information was positively verified by officer Coleman. It is contended that because he did not of his personal knowledge know the facts alleged in the information it is nothing more than an information upon information and belief, and that for that reason plaintiff in error should have been discharged when it appeared from the testimony of the officer that he did not have personal knowledge of the facts. The knowledge that the officer had of the guilt of the plaintiff in error was derived from a positive confession of the latter to the officer, according to the officer's testimony. Such a confession is sufficient evidence to warrant a conviction by any court or jury, when voluntarily made, as it is shown to have been in this case, and it is also sufficient, for that reason, to authorize an officer, or any other person to whom such a confession is made, to file an information charging the facts confessed.

The court erred in overruling plaintiff in error's motion for a bill of particulars because not made in the proper time. It was made immediately after the motion to quash the information was overruled. The motion to quash was made before the motion to file a bill of particulars, and properly so. The fact that the trial was set for the day on which the motion to quash was considered could not have the effect to deprive the plaintiff in error of his right to a bill of particulars, as he made his motion immediately after the motion to quash was overruled and before the case was called for trial. He was entitled to know by a bill of particulars what the prosecution expected to prove. We must hold, however, that the error of the court in this

matter is not reversible error. Plaintiff in error on the trial was apprised by the testimony of the State's witnesses that one of the parties he was alleged to have procured was Sheean, who was a guest at the Carleon Hotel. There is no showing in this record that Sheean was not still a guest at the hotel at the time of the trial and his presence obtainable at the trial. We must assume, in the absence of such showing and in the absence of any effort to obtain him or to show that he could not be obtained in time, that his testimony could have been had at the trial. The act of procuring Sheean for the illicit purpose of Miss LaMont and receiving money, the proceeds of such illicit intercourse, as proved in this record, is sufficient to sustain the conviction in this case, which is a single conviction on a one-count information. He was informed on the trial of all the prosecution expected to prove, and did prove, in regard to the transaction with Sheean, in ample time to have procured Sheean as a witness in rebuttal of this testimony if it was untrue. Therefore he has not shown that he was prejudiced by the court's refusal to order a bill of particulars furnished him.

It is further objected by plaintiff in error that the court erred in admitting improper evidence on the trial. We have examined these objections and the evidence to which the objections were made and find that the record is substantially free from error in that regard. In one or two instances the court, perhaps, was technically in error in admitting evidence, but it was in regard to matters that absolutely had no tendency to prejudice plaintiff in error in any way. The trial was before the court without prejudicial error, and the evidence clearly sustained the finding and judgment of the court.

The judgment of the municipal court is affirmed.

*Judgment affirmed.*