(No. 32445.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MOSE HIGHTOWER, Plaintiff in Error.

*Opinion filed March 23, 1953—Rehearing denied May 18, 1953.*

538

Julius Lucius Echeles, of Chicago, for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, Arthur Manning, and Elmer Kissane, all of Chicago, of counsel,) for the People.

Mr. Justice Maxwell delivered the opinion of the court:

This case comes to this court on a writ of error to review a judgment of the criminal court of Cook County based on a jury verdict finding defendant, Mose Hightower, guilty of dispensing narcotic drugs in violation of

section 23 of the Uniform Narcotic Drug Act of this State. Ill. Rev. Stat. 1951, chap. 38, pars. 192.1-192.28.

The court sentenced defendant to serve in the penitentiary not less than twenty-five years and not more than fifty years, since the jury also found defendant had previously been convicted of violating certain sections of the Federal narcotic laws.

Defendant's motions to quash the indictment, to strike certain portions from the indictment, for new trial, for judgment of acquittal notwithstanding the verdict, and for arrest of judgment were denied by the trial court. The indictment charged defendant had dispensed narcotic drugs in Cook County in violation of the statute and also charged he was the same person previously indicted and convicted in the Federal court for violation of the Federal statutes pertaining to narcotics. Specifically, the proof showed defendant entered a plea of guilty to four counts of the Federal indictment and served a term of three years in a Federal penitentiary. Defendant now attacks the constitutionality of the Illinois Uniform Narcotic Drug Act. He further urges that section 23 of the act is inapplicable to this case. Other errors assigned relate to proof and alleged prejudicial conduct during the trial.

The evidence in this case shows that one Langford was arrested in his apartment in Chicago by police officers who found narcotics in his possession. The officers then proceeded to the apartment of one Williams where narcotics were also found. These officers waited at the Williams apartment and caused him to call the defendant on the telephone several times. No response to these calls was received from the defendant because he was not there at the time. Two different numbers were called and both were listed at the same address, 3735 South Cottage Grove Avenue in Chicago. The defendant operated a cleaning store, record shop and livery service at the South Cottage Grove address. After several hours the defendant telephoned to

Williams at his apartment where the officers were. One of the officers listened to the phone conversation wherein the defendant stated he had just returned to his shop and asked Williams what he had wanted. Williams stated that he had called him four or five times trying to get in touch with him. Williams then asked the defendant how the merchandise was and stated that he needed some. The defendant replied, "I have not got any right now, but bring over the bread what you got." Williams testified that "bread" meant money and that he did have $210 for the defendant which he had received from Langford for narcotics. Langford testified he had been in the penitentiary for the possession of narcotics and that Williams told him he was working for Hightower, the defendant. Williams also testified he was working for the defendant. No narcotics were found at the South Cottage Grove address by the officers, nor were any found on the person of the defendant. Within his rights, the defendant made no statement and did not testify. The officers identified themselves at defendant's establishment in the presence of several persons who appeared to be customers there and thereupon much confusion and commotion resulted.

The seized capsules and powders coming from the possession of Langford and Williams, and testified to by Williams as having come from the defendant, were properly preserved and identified. The chemist testified they contained heroin, a narcotic. An authenticated copy of the defendant's previous conviction was introduced into evidence and the deputy United States Marshal who delivered defendant to the Federal penitentiary identified him as being the same person. Defendant's evidence consisted of the testimony of two witnesses introduced for impeachment purposes only.

Defendant now contends that section 23 of the Illinois Uniform Narcotic Drug Act is unconstitutional because it

was not passed by the legislature in accordance with the constitution of this State. The Illinois constitution provides, by article IV, section 13, that "Every bill shall be read at large on three different days, in each house." We have carefully examined House Bill 544 as first proposed, which was read at large in the House of Representatives. Upon the second reading the act as first proposed was amended to read as it now presently appears. The bill then went to a third reading in the House and had three readings in the Senate in present form. Defendant's contention that the bill as finally passed is a complete substitution of the original bill is without merit. Certain words were deleted from the original bill proposed and certain other minor changes were made by certain insertions and modifications in certain words and terms therein. It is a rule in this State that amendments germane to the subject matter may be made without the proposed act, as amended, being read three times in each house. In order to come within the rule that an amendment need not be read three times in each house, it must be germane to the general subject of the bill as originally introduced. (*Giebelhausen* v. *Daley*, 407 Ill. 25, at 46.) We find that the amendment is germane to the general subject of House Bill 544 as originally introduced.

Defendant further contends that this section of the act is unconstitutional for the reason that it is vague, indefinite and susceptible to many diverse interpretations. This section reads as follows:

"Whoever violates this Act by selling, prescribing, administering, or dispensing any narcotic drug, shall be imprisoned in the penitentiary for a term of not less than 1 year nor more than 5 years for the first offense. Whoever violates this Act by possessing, having under his control, manufacturing or compounding any narcotic drug shall be fined for the first offense not more than $5,000.00, or be imprisoned for a period of not less than 1 year nor more

than 5 years, or both. For any subsequent offense the violator shall be imprisoned in the penitentiary for any term from 2 years to life.

"Whoever violates this Act by selling, prescribing, administering, or dispensing any narcotic drug to any person under 21 years of age, shall be imprisoned in the penitentiary for any term from 2 years to life.

"Whoever is authorized in this Act to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, who violates this Act by failing to comply with any provision prescribed in this Act for the exercise of such authority, for a first offense, shall be fined not more than $1000 or be imprisoned in the county jail for a term of not more than 1 year, or both; and for any subsequent offense, shall be fined not more than $3000 or be imprisoned in the penitentiary for a term of not more than 5 years, or both.

"Any offense under this Act shall be deemed a subsequent offense if the violator shall have been previously convicted of a felony under any law of the United States of America, or of any State or Territory or of the District of Columbia relating to narcotic drugs."

It is evident from a reading of this section that the crime of possession, *etc.*, of any narcotic drug is a misdemeanor, because it allows a fine. (*People* v. *Bain*, 359 Ill. 455.) Although no place of confinement is mentioned in the statute, it is an accepted rule of statutory construction that the omission of place of confinement in a penal statute raises a conclusive presumption that the confinement should be in the county jail. (24 Corpus Juris Secundum 1246, par. 2000.) There is no merit in defendant's claim that the punishment fixed for possession of narcotic drugs is indeterminate. Section 2 of the Sentence and Parole Act (Ill. Rev. Stat. 1951, chap. 38, par. 802,) provides for the imposition of an indeterminate sentence except for crimes enumerated in section 1, and a reading of this

entire section relating to indeterminate sentences clearly shows that it does not refer to, and in fact specifically exempts, county jail sentences.

We find no merit in defendant's contention that section 23 is inapplicable for the reason that the prior conviction occurred before the statute became effective. In *People v. Hanke,* 389 Ill. 602, at 604, we stated: "A statute increasing the punishment for a subsequent offense is not an *ex post facto* law merely because the prior conviction occurred before the statute was enacted or became effective." In Cooley on Constitutional Limitations, 8th ed. p. 553, the rule is stated as follows: "Heavier penalties are often provided by law for a second or subsequent offense than for the first, and it has not been deemed objectionable that in providing for the heavier penalty, the prior conviction authorized to be taken into account may have taken place before the law was passed. In such cases it is the second or subsequent offense that is punished, not the first."

Defendant seriously contends that the indictment was insufficient for the reason that his prior conviction and sentence to the Federal penitentiary for narcotics violation was not a felony. As authority for this proposition he relies on our opinion in the case of *People v. Byrnes,* 405 Ill. 103. The *Byrnes case* dealt with the Habitual Criminal Act of this State and is distinguishable from the present case. It is true that statutes which authorize the imposition of a more severe punishment and which are highly penal should not be applied to cases which do not by the strictest construction come under their provisions, as stated in the *Byrnes case.* We find, however, that under a strict construction of the act in question the legislature has specifically declared that a subsequent offense is one wherein the violator shall have been previously convicted of *a felony under any law of the United States of America.* At the time of the Federal conviction the defendant had committed a felony under Federal law and he therefore clearly

comes within the purview of this statute. We find little merit in defendant's argument that he was found guilty in the Federal court of a violation of the *revenue law* and not a narcotic law as provided for in the Illinois statute. Defendant's brief refers to the Harrison Act and states that the Federal government is at least equally concerned as is this State in prosecuting *narcotic law violators*. Defendant has cited many Federal cases which in effect hold that the Harrison Act is not a narcotic law but a revenue law. Little mention need be made of the fact that these cases are not in point, for the reason that the first section of the Illinois statute which contains several definitions refers to *Federal narcotic* laws. The Harrison Narcotic Act has been upheld as a valid enactment against contentions that it was not a revenue measure. While it may be assumed that the act has a moral end, and that the suppression of the drug habit by regulating the purchase, sale and distribution of narcotics is at least one of the incidental purposes of the legislation, nevertheless, it is held that the Harrison Narcotic Act will be treated as a revenue measure so that only such moral ends can be attained by it as such a construction permits. 17 American Jurisprudence, 850.

We have carefully examined the record in view of the claims of prejudice made by the defendant in respect to the conduct of the trial. It is true that in certain instances the assistant State's Attorneys could have been more cautious in respect to certain remarks pertaining to previous conviction of the defendant. However, this fact was clearly before the jury and properly so according to the provisions of section 23 of the act. We therefore find that no prejudicial error was committed by the court and assistant State's Attorneys in any remarks concerning this fact. We do not agree with defendant's contention that his prior conviction should have been deleted from the indictment. It is true that the Habitual Criminal Act of this State specifically provides that the fact of prior conviction and sentence in

the penitentiary must be pleaded in the indictment for the present offense and that the Illinois Uniform Narcotic Drug Act contains no such provision. However, we are of the opinion that it is necessary to plead this fact to justify a conviction and sentence under the aggravated penalty clause. In *People* v. *Boykin,* 298 Ill. 11, at page 21, we declared "Every fact necessary to sustain a sentence imposed by a court in a criminal case must be alleged in the information or in the indictment, and an indictment under which it is sought to impose a higher penalty by reason of a previous conviction must allege the fact of such conviction. (1 McClain on Crim. Law, section 28, p. 28.)" It is sufficient to state, in answer to defendant's contention that what seems to be a fair rule is practiced in the Federal courts, concerning the fact of prior convictions being omitted from the indictment and the jury's consideration, that such rule is founded on a specific statute governing such practice. This court is without power to adopt such practice without the prior sanction of the legislature.

Lastly, defendant complains of the sufficiency of the evidence and of the State's Attorney's failure to furnish him with the names of witnesses called by the prosecution. The record reveals that the trial court specifically considered this matter and gave counsel for defendant reasonable opportunity to talk to the witnesses and further gave defendant opportunity to make chemical analysis of the narcotics in evidence. We are of the opinion that the jury was justified under the evidence in this case in returning a verdict of guilty and that its verdict was not the result of any passion or prejudice. We are unable to say that defendant was prejudiced by anything that took place during the trial of this case and believe that he received a fair and impartial trial by both judge and jury.

For the foregoing reasons, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*