THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WALTER RACINOWSKI, Defendant-Appellant.

Third District   No. 79-44

Opinion filed December 7, 1979.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (John X. Breslin and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Appellant, Walter Racinowski, was convicted of escape (Ill. Rev. Stat. 1975, ch. 38, par. 1003—6—4). He was thereupon sentenced to an

extended determinate sentence of 12 years' imprisonment, with such term to run consecutively to the term of imprisonment for which he had been incarcerated originally. The charges were brought by information and appellant's case was tried by a jury. He appeals both his conviction and sentence to this court.

On September 23, 1974, Walter Racinowski was committed to the adult division of the Illinois Department of Corrections, Joliet Correctional Center. He was received at the center on November 23, 1974. His security classification at that time was "medium." On March 11, 1975, appellant's security classification was changed to "minimum with supervision," and on June 25, 1975, his classification was changed to "minimum," the highest grade at the center.

On August 7, 1975, the appellant, Racinowski, was given the job of repairman at Deepwell No. 3, a water pumping station located across the street from the main prison facility. At the time appellant lived alone at Deepwell No. 2, which is not a cellhouse but is built like a garage. Racinowski walked, some 10 times a day, unaccompanied by a guard, from his residence at Deepwell No. 2 to his work assignment at Deepwell No. 3. This walk took him through three gates, an administration building, a parking lot and across Collins Street.

On October 15, 1976, Racinowski called the armory and told the officer on duty that he would be late returning from his job assignment because of a steam leak. Racinowski then walked away from the building, went down to Woodruff Road and there hitchhiked a ride on a truck to Chicago. On April 22, 1978, while he was using the name of George Bliss, Racinowski was arrested for robbery. Subsequently, he was convicted of that crime. He was returned to the Joliet Correctional Center on June 8, 1978.

On the date of his arrival (June 8, 1978), after being advised of his *Miranda* rights, Racinowski made an oral statement to James Cantrill, correction lieutenant, and Racinowski also executed a handwritten statement. In these statements, appellant declared that on October 15, 1976, he was working at Deepwell No. 3. He stated that at about 8 p.m. he read a letter from his mother, which he had received a few days before, telling him that his mother and brother were both seriously ill. At approximately 8:30 p.m. he called the armory, telling the officer there that he would be late because of the steam leak. He also wrote that "after making the call I have decided * * * I was going to walk off from the Joliet Correctional Center." Appellant then explained how he walked off, hitched a ride to Chicago, visited his mother, from whom he received money, and proceeded to a northside hotel in Chicago.

Appellant's defense to the charge of escape was "necessity," *i.e.*, that the conduct which would otherwise be an offense is justifiable if the

accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct. The claimed injury which defendant was trying to avoid when he walked away from Deepwell No. 3 (he stated on trial and urges on appeal) was the loss of his life or serious injury to his person. Defendant testified at the trial that, on June 15, 1976, he was approached by an inmate named Jones, who requested that he bring narcotics into the institution for some black gang members. Defendant said he walked away but some minutes later was threatened at knifepoint by Jones. Defendant further testified that on August 16, 1976, he was approached by another inmate, Smokey, who threatened him verbally regarding the same matter. Defendant testified that he believed both these two men to be members of black gangs. Neither incident was reported to authorities. Defendant stated that he believed the authorities would not help him and, furthermore, that his record might fall into the hands of gang members, causing him further trouble from that source.

On appeal in this court, defendant first contends that the prosecution erred in bringing to the attention of the jury, both in cross-examination and in closing arguments, the fact that defendant had made no mention of these threats in his statement to Lieutenant Cantrill. Defendant claims that he was deprived of his privilege against self-incrimination by virtue thereof under the Illinois Constitution (Ill. Const. 1970, art. I, §10) and United States Constitution, amendments Five and Fourteen. The United States Supreme Court in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, held that a defendant's silence normally could not be used against him in a State prosecution. The court there reasoned that the right to silence, of which every accused must be informed, would be meaningless if the fact of such silence was, in the ordinary case, used against the defendant at a trial.

This rule has been interpreted and elaborated upon within the past year by the Illinois Supreme Court in *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857 (see *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39).

The violation alleged by the prosecutor to have been committed by the defendant in the instant case under the doctrine announced in the *Doyle* and *Beller* cases referred to involved a question put to defendant upon cross-examination and a remark by the prosecutor in his rebuttal summation.

In cross-examination, the prosecutor questioned defendant by stating, "You were not returned to the Joliet Correctional Center until about June 8, 1978?" to which the defendant responded, "That's right." The prosecutor further asked, "On that particular date, you gave that

statement * * * or wrote that statement to Mr. Cantrill. Is that correct?" Defendant answered, "How I left that institution, yes." Question: "You have testified on direct that you didn't give a reason why you left the institution?" Answer: "All he asked me was how I left the institution." Question: "You were leaving because your mother was sick and your brother was sick. That was not a reason, that was just something to throw into the statement?" Answer: "No. The real reason was if they got my file * * * would get into some inmates hands I would have been dead on arrival." Question: "But there, again, at that particular point, you decided not to tell anybody the real reason why you left Joliet?" Answer: "What good would it do? The people aren't going to help you."

It is apparent that defendant's reference to the "real reason" for his behavior is clearly sufficient to alert a trial judge to a manifest inconsistency in his custodial and trial statements. Under the standards set forth in *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857, Racinowski's failure to tell his whole story to Lieutenant Cantrill could be properly commented upon by the prosecution under the standards set forth in the *Beller* case. Under the procedures in the instant case, we need not extend a discussion of that issue for the reason that the allegedly objectionable question came in response to direct examination of defendant by his own counsel, where he was asked why he left the institution on October 15, and to which the defendant replied, "Well, according to them threats, I was worried about getting stabbed or something, and I was reading a letter I got from my people about my brother. He was in serious condition. He had a blood clot on his brain. So, I said, since I can't get no protection, I just left." The prosecutor questioned defendant as to whether Cantrill had asked him to write why he left the prison and defendant said, "No," and when the prosecutor further asked him if that was "an explanation as to why you left does not appear in there?" defendant answered, "No, it does not appear in here."

■ Here it is obvious that defense counsel is the first to bring to the attention of the jury the fact that the defendant's story of fearing for his life does not appear in his statement to Lieutenant Cantrill. At the trial, defendant also objected to the remark in the prosecutor's rebuttal summation, where the prosecutor said, "Mr. Racinowski at no time ever made mention of threats while in the prison or out, or back on the 8th of June, 1978, * * *. The first available opportunity he has to tell an official, 'hey, I left because I was afraid', what does he say, he says, I received a letter from my mother, and my mother was sick and my brother was sick, and then I decided to go." The references to defendant's failure to complain prior to his escape, outside of a *Miranda* type of interrogation, were proper and are not objected to here. The objection was to the prosecutor's mention of the defendant's failure to allege threats in his June

8, 1978, statement. We note, also, in this connection, that the prosecution's rebuttal came after a summation by the defense attorney which included the following statement:

"I put to you, ladies and gentlemen of the jury, the defendant's own testimony said that he did not tell Mr. Cantrill why he left because Mr. Cantrill did not ask him why he left. They didn't even talk about why he left. Cantrill didn't ask him, but I did."

It is notable, therefore, that Racinowski's silence as to his reason for leaving and that he omitted stating the reason relating to threats to Cantrill or to write out any such reason, were all brought to the attention of the jury by his own attorney before being commented upon by the prosecutor. Accordingly, we find no prejudice to defendant as a result of the comments made by the prosecutor in this case.

■ Defendant next argues that because of his "trusty" status, he should not have been charged with the Class 2 felony of escaping from an institution or facility of the adult division (Ill. Rev. Stat. 1975, ch. 38, par. 1003—6—4(a)), but rather should have been charged with a Class 3 felony under the provisions of the same statute which reads:

"A committed person who fails to return from furlough or from work and day release is guilty of a Class 3 felony."

The defendant offers no case law to support his contention, but reasons that he was subject to the same temptations as one placed on work release and did not engage in the stealth often displayed by more closely supervised inmates in carrying out a nonviolent escape. It is obvious that even more closely supervised prisoners than defendant are left relatively unguarded at times. Sometimes they escape during such a moment, without particular stealth or planning. They simply walk away, as did defendant here. Moreover, the defendant had not been placed on work release. The Department of Corrections did not allow him "to leave [the] institution or facility during reasonable hours [because] such release would assist the individual's rehabilitation and would not cause undue risk to the public * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 1003—13—2.) Although defendant was less supervised than certain other classes of prisoners, he was not allowed to mingle with the public. Although he had some, rather limited, freedom of movement, and was allowed to cross a public street unsupervised, he slept, worked, and ate in a Department of Corrections facility. There is no evidence that his regular companions were persons other than inmates, Department employees, and individuals screened by the Department. It was never determined by the Department that the defendant would not cause undue risk to the public. Defendant was never allowed to mingle with the public. Deepwell No. 3, from which the defendant walked away, was a facility of the adult division, and the jury was correct in determining this issue which involved the

finding that defendant was kept in a facility of the adult division at the time of his escape.

■■ Defendant was charged with escape, a Class 2 felony (Ill. Rev. Stat. 1975, ch. 38, par. 1003—6—4(a)). The normal sentence for such felony is "not less than 3 years and not more than 7 years." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(5).) At the sentencing hearing, however, the trial judge found that defendant had been convicted of a felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding the time spent in custody, and such charges had been separately brought and tried and arose out of different series of acts. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(1).) The trial court, therefore, was authorized to sentence the defendant to an extended term of "not less than 7 and not more than 14 years" in accordance with section 5—8—2(a)(4) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2(a)(4)). Defendant was sentenced to a prison term of 12 years, with such term to run consecutively to the term of imprisonment he had been serving at Joliet prior to his escape. Defendant argues that the extended term provision of section 5—8—2 cannot be applied in the instant case because the defendant's prior convictions had not been alleged in the information. There is no constitutional requirement that prior offenses, which may subject a criminal defendant to enhanced penalties under State habitual criminal statutes, need be placed in an indictment or information before trial. (*Oyler v. Boles* (1962), 368 U.S. 448, 7 L. Ed. 2d 446, 82 S. Ct. 501.) It is sufficient that a defendant be notified so that he can meet the allegation of prior convictions before the sentencing hearing itself, although if he is represented by counsel, such notice may come soon before the sentencing hearing.

We note that many States favor the procedure of alleging defendant's prior convictions in the indictment, when such convictions may subject a defendant to an enhanced penalty under an habitual criminal statute. (See 39 Am. Jur. 2d *Habitual Criminals* §20 (1968).) Such procedure was mandated by the Illinois Habitual Criminal Act (Ill. Rev. Stat. 1961, ch. 38, pars. 603.1 through 603.9) which was repealed in 1963. The procedure referred to is not universal. The rule in Illinois is one of deference to the legislative enactments on this issue. (See *People v. Hightower* (1953), 414 Ill. 537, 545, 112 N.E.2d 126.) Where a criminal statute specifically provides that a previous conviction *mandates* enhancing the sentence or raising the degree of the offense, such previous conviction must be alleged in the indictment and proven to the fact finder. (*People v. Breitweiser* (1976), 44 Ill. App. 3d 284, 357 N.E.2d 890, construing section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 704(d)); *People v. Ostrand* (1966), 35 Ill. 2d 520, 529, 221 N.E.2d 499, construing section 24—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1961, ch. 38, par.

24—1(b)); *People v. Ramey* (1974), 22 Ill. App. 3d 916, 317 N.E.2d 143, construing section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 16—1); *People v. Hightower* (1953), 414 Ill. 537, 112 N.E.2d 126, construing section 23 of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1951, ch. 38, par. 192.23).) All of these statutes either specifically raise the classification of the crime for a second offense or specifically raise the penalty range to be applied to a second offense. The penalties so provided are not discretionary with the judge. Therefore, under any of them, a prior conviction becomes an element of the offense charged, and must be alleged in the indictment or information. See *People v. Boykin* (1921), 298 Ill. 11, 21, 131 N.E. 133.

However, the extended term provisions of section 5—8—2, with which we are concerned, may be applied at the discretion of the court, pursuant to findings under section 5—5—3.2(b). Section 5—5—3.2 was titled by our legislature "Factors in Aggravation." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b).) Subsection (a) of that section provides that a judge may consider aggravating factors in determining that a greater sentence than the minimum provided in section 5—8—1 for each class of offense is appropriate in a given case. Similarly, subsection (b) provides that the judge may consider either (1) defendant's prior convictions for offenses of the same or greater class or (2) his brutality or cruelty in the commission of the offense. If *either* of these is found present, the judge may, at his discretion, sentence defendant to a penalty within the extended range for his class of offense provided for in section 5—8—2. While the maximum possible sentence is thereby enhanced, the class of the offense remains unchanged. Had the legislature intended to give no effect to the term "class" of offense, we doubt that it would have used that term so extensively in the Code of Corrections. Since every offense is of a certain class, we must conclude that the possible application of an extended term for the violation of that class of offense does not constitute an element of the offense, and need not be alleged in the information. We also note that section 5—8—2 provides that:

> "(b) If the conviction was by plea, it shall appear on the record that the plea was entered with the defendant's knowledge that a sentence under this Section was a possibility. If it does not so appear on the record, the defendant shall not be subject to such a sentence unless he is first given an opportunity to withdraw his plea without prejudice." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2.)

This is basically a restatement of the requirement of Supreme Court Rule 402(a)(2) (Ill. Rev. Stat. 1977, ch. 110A, par. 402(a)(2)). The fact that the legislature has seen fit to specifically require notice of the possibility of an extended term in the court's admonition before its acceptance of a guilty

plea indicates that it considered but rejected a requirement that similar notice be given a defendant who chooses to go to trial.

■■ Defendant's prior conviction is a "factor in aggravation" and exposes him to an extended sentence under section 5—8—2. It is a charge which a defendant faces at his sentencing hearing. It is not an element of the offense, and it need not be alleged in the information or otherwise before trial.

> Section 5—8—2 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2) reads:
>
> "Extended Term: (a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to * * *."

Section 5—5—3.2 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2) reads:

> "Factors in Aggravation: * * * (b) the following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 [par. 1005—8—2 of this chapter] upon any offender who was at least 17 years old on the date the crime was committed:
>
> > (1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or
> >
> > (2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

Defendant argues that an irreconcilable conflict exists between the use of the phrase "unless the factors * * * set forth in paragraph (b) of Section 5—5—3.2 were found * * *" in section 5—8—2 and the use of the disjunctive "or" between subparts (1) and (2) of section 5—5—3.2(b) of the Code of Corrections. He argues that such conflict must be resolved in favor of the defendant in a penal statute of this type. We note that if a statute creating or increasing a penalty or punishment is capable of two constructions, the one which operates in favor of an accused is to be adopted. (*People v. Lund* (1943), 382 Ill. 213, 215-16, 46 N.E.2d 929.) The defendant argues that the use of the plural "factors" in section 5—8—2 necessitates the finding that all of the factors of subparts (1) and (2) of

section 5—5—3.2(b) must be present before an extended term may be imposed. Clearly the defendant in this case did not, in his escape from the Joliet Correctional Center, commit an offense "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

■■ We do not, however, agree that the use of the term "factors" in section 5—8—2 necessitates a finding of all of the factors listed in subparts (1) and (2) of section 5—5—3.2(b). Subparts (1) and (2) are clearly connected by the disjunctive "or." (See *People v. Warfel* (1979), 67 Ill. App. 3d 620, 625, 385 N.E.2d 175.) Subpart (1) has several legal requirements and does not represent but a single factor. The same is true of subpart (2). As stated in *People v. Kirkrand* (1947), 397 Ill. 588, 590, 74 N.E.2d 813:

> "The ascertainment of the legislative intent is, even where penal statutes are concerned, the sole legitimate purpose of judicial construction, and the rule of strict construction is to be utilized along with the various other rules of construction simply as a means of discerning and making the means of legislative intent effective. It is true penal laws are to be construed strictly but they are not to be construed so strictly as to defeat the obvious intention of the legislature."

See also *People v. Lutz* (1978), 73 Ill. 2d 204, 212, 383 N.E.2d 171.

■■ We do not believe that the Code of Corrections, as amended by Public Act 80-1099, section 3 (the statute in question) is capable of two constructions. We assume that the legislature meant to give effect to all parts of its amendment of the Code. The use of the disjunctive "or" and the absence of a clear indication that all of the factors listed in subparts (1) and (2) need be found, leads to a conclusion that a finding in this case that defendant had been convicted of a felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding the time spent in custody, and that such charges were separately brought and tried and arose out of different series of acts, was sufficient to justify the imposition of the extended penalty terms of section 5—8—2 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2).

■■ The trial court in this case sentenced defendant to an extended term after finding him to be a prior offender under the terms of section 5—5—3.2(b)(1) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(1)). The court ordered that such term be served consecutively to the prior term of imprisonment. Section 5—8—4(g) (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—4(g)) requires that "A sentence under Section 3—6—4 for escape or attempted escape shall be served consecutive to the terms under which the offender is held by the Department of Corrections." There is nothing in section 5—5—3.2(b)(1) that indicates that a judge may not consider a prior conviction, resulting in incarceration, in sentencing a

defendant to a discretionary extended term, when such sentence is imposed for the crime of escaping from such incarceration. The mandatory consecutive sentence for escape and the discretionary extended sentence for second offenders are not mutually exclusive. We do not find that the judge abused his discretion in sentencing the defendant to an extended term. Moreover, this defendant had been convicted, also (in 1978), of the crime of robbery, a Class 2 felony. The sentencing judge would have been entitled to consider that crime, also, as a basis for his imposition of an extended sentence. That crime, committed while the defendant was at large, was unrelated to his incarceration.

Defendant argues that the imposition of both a consecutive sentence and an extended sentence in this case is excessive. The imposition of a consecutive sentence for the crime of escape is mandated by statute (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—4(g)). Therefore, the trial judge had no discretion to impose a concurrent sentence. An extended sentence of 12 years was imposed. Escape is a Class 2 felony, and the normal maximum is 7 years. The extended maximum is 14 years. The defendant was given an extended sentence because of his prior convictions. The defendant argues that the use of prior convictions to extend the penalty for the crime of escape makes escape a special, more seriously punished, variety of Class 2 felony than others, because an escapee must necessarily have a prior criminal record. While it is true that an escapee must have been convicted of a crime, it is not necessarily true that his crime was a Class 2 or greater felony. Before an extended term can be imposed, the prior crime must be of the same or greater class. Consequently, not all escapees are subject to extended sentencing. In the instant case, this issue is not substantial for the reason that defendant had the following criminal record:

    1944,   burglary and larceny, 3-6 years
    1948,   burglary, 1-3 years
    1952,   armed robbery, 3-14 years
    1961,   receiving stolen property, 1 year
    1964,   burglary, robbery and unlawful use of weapons, 2-10 years
    1970,   theft, 1 year probation
    1972,   armed robbery, 10-30 years
    1978,   (while at large from this escape) armed robbery, 10-30 years.

The defense argues that the defendant was given an extended sentence because of his 1972 armed robbery conviction (apparently, the conviction as to which he was serving time). That, however, is not the only conviction involved in the instant case. Several of his prior crimes were Class 2 or greater felonies. If they were committed within 10 years of his escape trial, excluding time spent in custody, they may be considered.

According to the language of the statute (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)(1)), his 1978 robbery conviction may also be considered, as it was a previous conviction, although it may not be clear that it was considered by the court.

If, however, the other crimes referred to were not considered by the trial judge in imposing the extended sentence, but only the armed robbery conviction of 1972 was considered, we still would approve the sentencing procedure in the instant case.

For the reasons stated, therefore, the judgment of the Circuit Court of Will County, and the sentence imposed in this cause are both affirmed.

Judgment and sentence affirmed.

STENGEL and BARRY, JJ., concur.