THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIE GRIER, Defendant-Appellant.

First District (2nd Division)    No. 79-1733

Opinion filed November 12, 1980.—Rehearing denied December 30, 1980.

Ralph Ruebner and Bradley S. Bridge, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Christine A. Campbell, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Defendant, Willie Grier, was charged in an information with rob-

bery. (Ill. Rev. Stat. 1977, ch. 38, par. 18—1.) Following a bench trial, defendant was found guilty and was sentenced to serve an extended term of eight years in the Illinois Department of Corrections. From that judgment and sentence defendant appeals presenting the following issues for review: (1) whether the trial court erred in ruling that portions of the public defender's notes referring to a witness' oral statement were discoverable material for possible impeachment of the assistant public defender who testified as to that conversation; (2) whether the trial court's admission of the victim's out-of-court identification of defendant was reversible error; and (3) whether the trial court properly sentenced defendant to an extended term for robbery.

For reasons hereinafter set forth we affirm the judgment of the circuit court of Cook County.

Lilly Dennis, a 51-year-old nurse's assistant, testified that on December 12, 1978, at approximately 2 a.m., she was driving home from playing cards at a friend's home. At 110th and Michigan she stopped to buy some shrimp from White's Shrimp House. As she was about to exit her automobile, two young men opened the unlocked door to her car. The one on the driver's side ordered her to get out and threatened to blow her head off if she did not do so. The man on the passenger side whom she identified in court as defendant pushed her towards the driver's side door. When Dennis tried to keep her purse with her as she got out of her car, the other assailant grabbed her purse and threw it back in the car. Both men jumped in and drove west on 110th Street toward State Street. Dennis flagged down a police car immediately after the robbery occurred and told the officer that two young men had just taken her car and her purse. She described her car, a 1977 white on blue Cadillac, to the officer (John Lotito) and told him the direction in which they had fled. The officer drove the victim to the area of 103rd and Halsted where she saw the two men who had robbed her standing against the side of her car guarded by another police officer. Over objection by defense counsel, Dennis testified that she had identified the car and purse as hers, examined the purse and discovered that $15 was missing. She testified further that at the scene she saw the two young men who had taken her car and purse. In court she identified defendant as one of the two men who had robbed her. Defendant was the man who had approached her car from the passenger side.

On cross-examination Dennis testified that she had been driving home from a party at a friend's house at 61st and St. Lawrence when she decided to stop for some shrimp. She denied having had anything to drink at the party. Dennis said she believed it was very close to 2 a.m. when she stopped near the restaurant. She did not recall testifying at the preliminary hearing that she had said approximately 2:45 a.m. Dennis

testified that the area where she parked was adequately lighted. She could not specify the height or weight of either man who robbed her and noticed no facial hair or other unusual characteristics. Dennis testified further that both men who had robbed her were at the preliminary hearing when she identified one of them, Carlos Woodward, as the man who approached the driver's side of her car. Dennis did not remember which man was present in court at the preliminary hearing when she had been asked to identify the man who came up to her from the driver's side. The prosecution and defense later stipulated that the transcript of the preliminary hearing testimony did not indicate whom she had so identified. Dennis testified that she did not remember being asked how long the offender remained at the scene or answering "within a half hour." She saw her car again about 2:30 a.m.

Sergeant Charles Berglund of the Chicago Police Department testified that on December 12, 1978, at 2:45 a.m., he was on duty in the vicinity of 103rd and Halsted. At that time he saw a late model Cadillac, white over blue, with two male occupants traveling westbound on 103rd approaching Halsted. In response to a flash message, the officer stopped the car and asked the driver whose car it was. It was stipulated that the sergeant would identify defendant as the passenger. The driver, Carlos Woodward, told Berglund the car belonged to his aunt, that both he and his passenger, defendant, had just left work and were going to a friend's house at 75th and Rhodes for a few drinks. The officer checked the registration of the vehicle and discovered that it was registered to a Lilly Dennis who, to the officer's knowledge, had been robbed. Berglund then ordered both men to get out of the car and place their hands on top of the car. He saw a purse in the back seat of the car. Within minutes two other officers brought the victim to the scene. Berglund asked Dennis if the car he had stopped was hers. She said yes and identified the men in custody, defendant and Carlos Woodward, as the two who had robbed her. This testimony was admitted over objection.

On cross-examination Berglund testified that the police report he signed contained no statement by Carlos Woodward to any officer. In Berglund's opinion, Dennis appeared to have been drinking that evening but was not intoxicated. She was able to relate the details of the robbery and where it had occurred.

Officer John Lotito testified that on December 12, 1978, he was assigned to a beat patrol in the 5th District with his partner, Tom Costello. At approximately 2:30 or 2:45 a.m., he was waved down by Dennis who said she had just been robbed of her car and purse by two men. She described the car to the officer who put out a flash message for it. While touring the area with the victim, they received a radio message and went to 102nd and Halsted. There they saw a 1977 Cadillac stopped

by another police car and two male Negroes standing up against the car. The victim identified her car. When Officer Lotito testified that the victim identified the two men as the ones who had robbed her, defense counsel objected. The court sustained the objection and the answer was stricken.

On cross-examination Officer Lotito testified that the victim had described the offenders as two male Negroes. He did not recall whether she had given any more detailed description than that.

Officer Michael Leonard testified that he was one of the officers who responded to the flash message and went to the location where Sergeant Berglund had arrested defendant and Carlos Woodward. Leonard said he searched the victim's car and found a woman's black purse with a driver's license and other identification belonging to one Lilly Dennis. The victim identified the purse and its contents. The officer testified that Dennis had an odor of alcohol on her breath, but that in his opinion she spoke coherently and did not appear to be under the influence of alcohol. On cross-examination Leonard testified that in characterizing the victim's sobriety he had checked the box marked "had been drinking" on his report. The officer denied that the delay in preparing the reports was attributable to the victim's consumption of alcohol. He testified further that he did not recall speaking to Assistant Public Defender Richard Scholz or anyone else at the preliminary hearing about the witness' sobriety. Finally Leonard testified that he did not recall taking any statements from Carlos Woodward. After stipulating that defendant was 20 years old, the State rested.

Testifying for defendant, Assistant Public Defender Richard Scholz said that he had represented defendant at the preliminary hearing before Judge Moran on December 13, 1978, and that the victim then identified defendant and not Carlos Woodward as the man who had approached her car from the driver's side. According to Scholz, Woodward was not in court when this identification was made. He testified further that at the preliminary hearing Officer Leonard told him that the victim had been drinking and was drunk when he saw her the day of the robbery. On cross-examination, Scholz emphasized that Leonard had said, "She had been drinking, she was drunk." After Scholz testified that he had taken notes of his conversation with Leonard, the prosecutor asked the trial court to order Scholz's notes on that conversation to be turned over to the prosecutor for possible impeachment. Defense counsel objected on the ground that they were privileged information as "work product." The court ordered defense counsel to present the prosecutor with two excised portions of Scholz's notes which referred to his conversation with Leonard at the time of the preliminary hearing. The supplemental record filed by defendant contains a copy of one of the excised portions and the

paper from which it was torn, People's Exhibit No. 2, in the trial court. Scholz testified that in his notes of his conversation with Leonard he wrote, "Cop [Leonard] said she *had* been drinking." (People's Exhibit No. 2.) On page 1 of his notes, Scholz wrote "Victim had been drinking" under the heading "Summary of police statements." He said that nowhere in the exhibit did he use the word "drunk" in relating Leonard's conversation.

Defendant's last witness, Carlos Woodward, testified that on December 13, 1978, he entered a plea of guilty to the charge of robbing Mrs. Dennis on December 12 and was placed on two years felony probation. Woodward said that he first met Dennis near the shrimp restaurant in the vicinity of 110th and Michigan. He was alone and she was sitting in her car. According to Woodward, Dennis asked him if the restaurant was still open. He offered to check if it was. After he found that it was closed, he told her there was a White Castle open at 111th and State. Woodward said the two of them drove to the White Castle. When they arrived, Dennis got out to eat but Woodward decided to take her purse and steal her car. Woodward testified that defendant was not with him when he robbed Dennis. He put the purse on the back floor of the car and drove south on State Street, then back to Michigan Avenue. When he got to Michigan he saw defendant standing at a bus stop. Woodward offered to give defendant a ride. Defendant asked him if the car was stolen and Woodward said no, it belonged to his aunt. Defendant got into the car, and the two headed towards defendant's home. About five minutes after he picked up defendant, Woodward was stopped by the police. Woodward testified that he told the police that defendant was not with him when he robbed Dennis. He also so testified at the preliminary hearing.

On cross-examination Woodward admitted that he did not go to court of his own free will but that he was brought there by a sheriff. Woodward testified that Dennis offered him a drink of Canadian Club from her pocketbook on the way to the White Castle. He had a short drink and when she exited the car to go into the restaurant, he grabbed her purse and drove off in her car. Woodward said that he picked up defendant on Michigan Avenue just a block or two north of 115th Street. He did not recall testifying at the preliminary hearing that he had picked defendant up at 105th and Michigan. On further cross-examination Woodward testified that he did not tell any police officer at the scene that defendant was not with him when he robbed the victim. He did not immediately tell them anything when he arrived at the station and could not recall exactly what he did say when he decided to speak to the police at the station. Woodward testified that at no time did he tell defendant he had just robbed a woman and that the police might be looking for him.

After hearing arguments of counsel, the trial court found defendant

guilty as charged and ordered a presentence investigation. The report indicated that on May 3, 1977, defendant pleaded guilty to a charge of burglary and was placed on three years felony probation. On November 10, 1977, he was sentenced to serve one to four years in the Illinois State Penitentiary following his plea of guilty to another burglary. On November 23, 1977, defendant pleaded guilty to a charge of robbery and received a one- to four-year sentence to run concurrently with his sentence on the second burglary conviction. Defendant was paroled on September 8, 1978. Based on this record, the trial court sentenced defendant to serve an extended term of eight years in the Department of Corrections.

## I.

Defendant's first assignment of error is that the trial court improperly ordered portions of the public defender's notes referring to a witness' oral statement to be turned over to the prosecution for purposes of possible impeachment of the assistant public defender who testified as to that conversation.

At trial defendant raised the issue of the victim's sobriety at the time she was robbed. Although the victim, Mrs. Dennis, denied having had anything to drink before the robbery, two police officers, Sergeant Berglund and Officer Leonard, testified that she had an odor of alcohol on her breath. On cross-examination of Leonard, defense counsel tried to establish that the victim had not only been drinking, but that she was drunk. Leonard denied this and testified that he did not recall telling anyone that Dennis was drunk when he saw her soon after the robbery. In an effort to impeach this testimony, defense counsel called as a witness the assistant public defender who had represented defendant at the preliminary hearing, Richard Scholz. Scholz testified that at that hearing Leonard had told him "she [Mrs. Dennis] had been drinking, she was drunk."

On cross-examination Scholz said he had taken notes of his conversation with the officer and that they were in possession of defendant's trial counsel. The prosecutor moved for production of the notes relating this conversation, and after lengthy argument and over defense counsel's strenuous objections, two excised portions of Scholz's notes were turned over to the prosecutor. The prosecutor used the notes in an effort to impeach Scholz as to what Officer Leonard had told him at the preliminary hearing regarding the victim's sobriety. The supplemental record contains the two-page notes from which the portions defendant complains of were excised. Only one of the excised portions could be found. At trial Scholz admitted that nowhere in his notes of his conversation with Leonard did he indicate that Leonard had used the word "drunk" in describing Dennis' condition. Defendant contends that the excised portions of Scholz's notes were the attorney's "work product" and as such

that they were absolutely protected from disclosure under Supreme Court Rule 412(j)(i). (Ill. Rev. Stat. 1977, ch. 110A, par. 412(j)(i).) The State argues that the excised portions of Scholz's notes contained a verbatim or substantially verbatim account of officer Leonard's statement and that they were discoverable for possible impeachment because they referred to a conversation about which the witness had already testified.

■■ Illinois Supreme Court Rule 412(j)(i) provides:

> "Work product. Disclosure under this rule and Rule 413 shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the State or members of its legal or investigative staffs, or of defense counsel or his staff."

The work product privilege relied upon by defendant operates as a limitation of discovery under Rules 412 and 413. These rules implement the procedures to be followed in *pre*trial discovery. Whether the rule governing discovery by the prosecution (Rule 413(d)(i)) would have allowed for the *pre*trial disclosure of the materials which were here ordered to be turned over to the State *at trial* is a question not presented by this record. In the case at bar the prosecution requested those portions of Scholz's work papers which contained his notes of the conversation with Officer Leonard not in pretrial discovery pursuant to Rule 413, but at trial for possible impeachment. What the United States Supreme Court said in reviewing the impact of Federal Rule of Criminal Procedure 16(c), the equivalent of our Rule 413, on the conduct of the trial itself applies with full force here. There was no "intention that the Rule would limit the court's power to order production once trial has begun * * *. It was not intended to constrict a district court's control over evidentiary questions arising at trial." (*United States v. Nobles* (1975), 422 U.S. 225, 235-36, 45 L. Ed. 2d 141, 152, 95 S. Ct. 2160, 2168-69.) This being so, it is necessary to consider, first, whether the protection of the work product privilege extends to material requested after trial has commenced and, second, whether that privilege was waived in the instant case by Scholz's taking the stand to testify as to a conversation on which he had made notes.

The Committee Comments to the work product privilege indicate that the material "which is protected is primarily that which is protected from civil discovery under the doctrine of *Hickman v. Taylor* (1947), 329 U.S. 495." Although *Hickman* was concerned exclusively with discovery before trial, the United States Supreme Court has acknowledged that "the concerns reflected in the work-product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case." *Nobles* (1975), 422 U.S. 225, 239, 45 L. Ed. 2d 141, 154, 95 S. Ct. 2160, 2170.

In their briefs, the parties to the appeal have discussed at length whether the excised portions of Scholz's notes should be considered as "work product." Whether or not the notes may be said to contain a substantially verbatim account of Leonard's conversation with Scholz appears to have been considered by both defendant and the State as the critical fact in answering this question. If the prosecution had sought this material in pretrial discovery pursuant to Rule 413, the fact that Scholz's notes may have been only a summary of his conversation with Leonard would not, by itself, have precluded their discovery. Rule 413(d)(i) requires the defense to furnish to the prosecution "[t]he names and last known addresses of persons he intends to call as witnesses together with their relevant written or recorded statements, including memoranda reporting or summarizing their oral statements, * * *." Under Rule 412, which controls disclosure to the accused, the State is required to turn over only those memoranda that contain substantially verbatim reports of their oral statements. Memoranda that report or summarize oral statements cannot be discovered under the Rule unless the trial court determines in an *in camera* examination that the memoranda are "substantially verbatim reports of oral statements." The Historical and Practice Notes to the Rules acknowledge this difference. Thus, the cases cited by both defendant and the People in their briefs that address the propriety of disclosing to the *defense* memoranda which are not substantially verbatim do not focus on the propriety of disclosing such memoranda to the *State* prior to trial under Rule 413 or at trial for possible impeachment.

■■ Whether Scholz's notes may be said to contain a substantially verbatim report of his conversation with Officer Leonard does not determine whether the notes were protected against disclosure by the work product privilege. Even if it is assumed that the excised notes were part of Scholz's work product, however, by his taking the stand and testifying as to the conversation on which he took notes, he has waived invocation of the privilege. Contrary to defendant's position, the Supreme Court of the United States has observed that "the privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *Nobles*, 422 U.S. 225, 239, 45 L. Ed. 2d 141, 154, 95 S. Ct. 2160, 2170.

■■ In *Nobles*, defense counsel tried to impeach the credibility of a prosecution witness by offering the testimony of a defense investigator regarding statements that that investigator had previously obtained from a prosecution witness. When that investigator was himself called as a witness, the trial court stated that a copy of his report, inspected and edited *in camera* in order to excise matters extraneous to those statements, would have to be turned over to the prosecution for inspection at the conclusion of the investigator's testimony. Defense counsel refused to

produce his investigator's report, and the trial court barred the investigator from testifying as to those matters. The Supreme Court upheld this order over a defense claim that the work product doctrine prevented the forced disclosure of the report. "* * * [R]espondent sought to adduce the testimony of the investigator and contrast his recollection of the contested statements with that of the prosecution's witnesses. Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony." (*Nobles*, 422 U.S. 225, 239, 45 L. Ed. 2d 141, 154, 95 S. Ct. 2160, 2170.) In the case at bar, by electing to present Scholz as a witness for the purpose of contrasting Scholz's recollection of his conversation with Officer Leonard with the recollection of the officer, defendant waived the privilege with respect to matters covered in Scholz's testimony. The trial court did not open up defense counsel's file to the State. Consistent with the approach used in *Nobles*, and required in Rule 415(e),(f) (Ill. Rev. Stat. 1977, ch. 110A, par. 415(e),(f)), the court allowed only those portions of Scholz's notes which related his conversation with Officer Leonard to be excised and turned over to the prosecution for possible use as impeachment.

Defendant quotes from the opinion in *Nobles* a part of footnote 14, wherein the Supreme Court said:

"Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver." 422 U.S. 225, 239 n.14, 45 L. Ed. 2d 141, 154 n.14, 95 S. Ct. 2160, 2171 n.14.

■■ Defendant fails to add that the Supreme Court went on to say that where "counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents." (422 U.S. 225, 239 n.14, 45 L. Ed. 2d 141, 154 n.14, 95 S. Ct. 2160, 2171 n.14.) Here, counsel made a testimonial use of those materials by placing Scholz on the stand to testify to a conversation about which he admitted that he had made notes. Defendant "can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination. [Citation.]" (*Nobles*, 422 U.S. 225, 239-40, 45 L. Ed. 2d 141, 154, 95 S. Ct. 2160, 2171.) The trial court's order in the present case was, in our opinion, proper. This being so, whether the prosecutor's use of the notes in cross-examining Scholz was impeaching was a matter for the trial court, sitting as the trier of fact, to decide. Any error in allowing Scholz to be cross-examined on the basis of his notes with Leonard must be considered harmless in light of the unimpeached

testimony of Sergeant Berglund that the victim was not under the influence of alcohol at the time of the offense.

## II.

Defendant next contends that the trial court committed reversible error in admitting over objection testimony relating the victim's out-of-court identification of defendant because there was no substantial corroboration of the victim's identification and her in-court identification was not positive. At the outset it must be noted that in their briefs both defendant and the State proceed on the assumption that the victim of the robbery, Lilly Dennis, testified as to her out-of-court identification of defendant. Although there is no question, based on the testimony of Sergeant Berglund, that she did make such an identification, a careful examination of the record fails to disclose that Dennis herself testified to the out-of-court statement. When asked to relate what she told the police on the scene, an objection was interposed. After extended colloquy on the admissibility of this testimony, the court overruled the objection. Dennis testified that at the location of the arrest she identified her car and her purse and checked its contents. When asked if anyone else was present, she answered yes, "the two young mens [*sic*] that took my car and purse." Dennis then identified defendant in court as one of the two men who had robbed her. Nowhere in her testimony did she say that she had identified the offenders to the police at the scene of the arrest. Whether a witness' testimony relating her own prior identification is hearsay may be questioned (*People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363), but whether such testimony is admissible or is objectionable on other evidentiary grounds is a question not presented by this record.

■■ A further clarification is appropriate. Defendant's brief suggests that more than one police officer related the victim's out-of-court identification of defendant. Such is not the case. Only Sergeant Berglund so testified. Officer Lotito's answer on direct examination that "she identified the two male Negroes" was objected to by defense counsel. The trial court sustained the objection and on counsel's motion ordered the answer stricken. Since this was a bench trial, there is a qualified presumption that the trial judge considered only competent evidence in reaching his decision. (*People v. Palmer* (1962), 26 Ill. 2d 464, 187 N.E.2d 236.) This presumption may be rebutted by the recorded statements of the trial judge. (*People v. Burress* (1972), 3 Ill. App. 3d 408, 279 N.E.2d 523.) Where, as here, the court sustained the objection to the evidence being offered, the presumption is not overcome. (*Palmer.*) And Officer Leonard did not testify as to any conversations with the victim. Defendant's argument that the out-of-court identification testimony admitted

over his objection constituted reversible error is based, therefore, only upon Sergeant Berglund's testimony relating that identification.

Berglund testified that when the victim was brought to the scene of the arrest, she identified her car and the two men present, defendant and Carlos Woodward, as the men who had robbed her. Defendant argues that under *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164, this testimony was inadmissible hearsay and requires reversal of his conviction unless there was substantial corroboration of her identification and a positive in-court identification, which defendant says was lacking. In their brief, the People argue that the basic rationale for the hearsay rule, the inability to cross-examine the out-of-court declarant, is obviated where the declarant (Dennis) was present, testified and was available for cross-examination. Furthermore, the People suggest that the *Robinson* requirements of substantial corroboration and a positive in-court identification were satisfied in this case.

In *Robinson* defendant asserted that it was "reversible error to allow the police officers' hearsay testimony concerning the identification of defendant's photograph and of his person at the lineup." (*Robinson*, at 200.) The supreme court agreed that the testimony was hearsay, but held that its admission did not require reversal where the identification testimony was cumulative to that of the complainant, where the complaining witness' identification was positive and where corroborative circumstantial facts were present. (*Robinson*, at 200-01.) Defendant does not contend that Berglund's testimony was not merely cumulative to that of the victim's in-court identification, nor does he suggest that he was not able to cross-examine Dennis regarding the details of her identification. He does argue, however, that there was no corroboration and no positive in-court identification.

In regard to the quality of the identification, defendant first states that Dennis described the clothing worn by the public defender when asked to describe the clothing of the person who had taken her car and that, according to defense counsel at trial, she pointed to him rather than to defendant when asked to point to the person who had taken her car. The record does not support this statement. When defense counsel asked that the record reflect that she had pointed out defense counsel, not the defendant, Dennis said, "No, I'm talking about the black man," indicating defendant. At trial defendant was wearing a black shirt and Mr. McNamara, one of his attorneys, was wearing a navy blue coat. From the trial court's comments it appears that she was describing defendant. Explaining his finding of guilty, the trial judge said that "the victim positively identified the Defendant in Court as one of the persons who took her car on December 12th, 1978."

In attacking Dennis' identification, defendant also mentions certain inconsistencies between her testimony at the preliminary hearing and at trial regarding which offender entered the driver's side of her car and the exact time the robbery took place. These inconsistencies which the trial court noted are minor and do not affect the positive identification the victim made of defendant.

■■ Defendant points out that contrary to the victim's statements that she had not had anything to drink, two police officers testified that there was an odor of alcohol on her breath. Those officers also testified, however, that she spoke coherently, was able to relate the details of the robbery to them and did not appear to be under the influence of alcohol. Under these circumstances, her denial of drinking anything is of slight significance and does not reflect unfavorably on her ability to identify her assailants. Defendant's reliance on *People v. Johnson* (1979), 68 Ill. App. 3d 836, 386 N.E.2d 642, is misplaced. In *Johnson* the court said that the admission into evidence of an out-of-court identification, while hearsay, does not amount to reversible error *per se*. Reversal will be the result " 'only when it serves as a substitute for courtroom identification or when it is used to strengthen and corroborate a weak identification. However, if the hearsay testimony is merely cumulative * * * or is supported by a positive identification and by other corroborative circumstances [citations], it constitutes harmless error.' *People v. Coleman* (1974), 17 Ill. App. 3d 421, 428, 308 N.E.2d 364, 369." (*Johnson*, at 842.) In *Johnson* the out-of-court declarant did not testify at trial. Here, the declarant, Dennis, did testify and was available for cross-examination. Moreover, the trial court found her identification positive.

Defendant argues further that there was no substantial corroboration of the victim's identification of defendant as one of the two men who robbed her. Defendant states that the only corroboration of Dennis' testimony was that defendant was a passenger in her car when the police stopped Carlos Woodward. Defendant claims that his presence in her car was adequately explained by Carlos Woodward's testimony that he had picked up defendant at a bus stop after Woodward had robbed Mrs. Dennis. The trial court, however, chose not to believe Woodward who had already pleaded guilty to the offense on December 13, 1978, in return for a sentence of probation and characterized Woodward's account as "unbelievable." Nor was Woodward's claim that he and he alone robbed Mrs. Dennis consistent with her testimony that two men, not one, had robbed her. When the police stopped Mrs. Dennis' car, they found two men, defendant and Woodward, in the car and the victim's purse from which $15 had been taken. Woodward's version of the robbery was also at odds with what the police observed after Woodward was arrested. The victim's purse, which Woodward said he had thrown on the floor of the

back seat, was found on the seat itself. The bottle of Canadian Club which Woodward said Dennis had offered to him was not found in her purse.

Defendant's citation of *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363, in support of his position is inapposite. In *Clark*, the supreme court considered the propriety of a witness relating his own prior identification, a factual situation not present here. In *People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126, the complainant twice testified as to his own out-of-court identification, and this testimony was repeated by two police officers who were present for the identifications. Although there was a positive identification by the victim of the crime, there were no corroborative facts in support of that identification, and the court held that such testimony was reversible error. In the case at bar there was corroboration of the victim's account in that the police stopped two male Negroes driving the victim's car with her purse in the back seat. Moreover, in *Wright*, the case was tried by a jury and the court was concerned that the constant reiteration of the out-of-court identification "might have bolstered the identification and might have given the effect of corroboration." Here, there was no repetition of the out-of-court identification and the case was tried before the court sitting without a jury. Although the court overruled defense counsel's objection to Berglund's testimony relating Dennis' identification, the record does not reflect that by admitting this testimony, the court believed that the victim's testimony had been improperly enhanced. Berglund's testimony corroborated the victim's testimony in court that she saw the two men who had robbed her when Officer Lotito drove her to the location of the arrest. The identification of defendant as one of those two men, however, rested entirely on the testimony of the victim herself. No comments by the trial court indicate to the contrary. The presumption that a trial judge has considered only competent evidence in reaching his verdict may be rebutted only by the recorded statements of the trial judge. (*People v. Burress* (1972), 3 Ill. App. 3d 408, 279 N.E.2d 523.) Here the presumption has not been overcome.

■■ In commenting on the evidence, the trial court, which was in a superior position to make such an evaluation, specifically found that "the victim positively identified the Defendant in Court as one of the persons who took her car on December 12th, 1978, at 110th and Michigan, where she had parked preparatory to going into White's Shrimp House for food; and that the Defendant was present at that time with Carlos Woodward, who has, before, pleaded guilty to the offense, and that the Defendant was present when Carlos Woodward took her purse and threw it in the back seat of the car." In light of these comments, it cannot be said that the admission of Berglund's testimony either substituted for a courtroom

identification or bolstered and corroborated an otherwise weak identification in violation of *Robinson. People v. Mays* (1979), 74 Ill. App. 3d 145, 392 N.E.2d 106.

### III.

Finally, defendant argues that the imposition of an extended term of eight years was improper. At the hearing in aggravation and mitigation the State established that defendant had been convicted of two burglaries and one prior robbery.[1] Based on this criminal history, the court sentenced defendant to an extended term of eight years in the Illinois Department of Corrections. Defendant now contends that the imposition of this extended term was improper in that (1) the information in the instant case charging him with robbery did not allege any factors on which such a sentence could be imposed; and (2) under the statute proof of all aggravating factors is necessary for the imposition of an extended term.

Section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2(a)) states that a judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of section 5—5—3.2 were found to be present. Robbery is a Class 2 felony. Where the judge finds that such factors were present he may sentence an offender to the following:

"(4) [F]or a Class 2 felony, a term shall be not less than 7 years and not more than 14 years." Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2.

Section 5—5—3.2 reads:

"Factors in Aggravation. * * *

(b) [t]he following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed.

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or

(2) When a defendant is convicted of any felony and the court

---

[1] On May 3, 1977, defendant pleaded guilty to a charge of burglary and was placed on three years felony probation. On November 10, 1977, he was sentenced to serve one to four years in the Department of Corrections following his plea of guilty to another burglary. On November 23, 1977, defendant pleaded guilty to a charge of robbery and received a one- to four-year sentence to run concurrently with his sentence on the second burglary conviction.

finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

Defendant argues first that the failure of the information to allege the factors in aggravation precludes imposition of an extended term. In support of this position defendant cites *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499. In *Ostrand* the defendant was charged with felony unlawful use of weapons. The indictment alleged the commission of a felony within five years of the unlawful use of weapons offense, and the State introduced proof of that conviction at trial. Defendant there argued that the question of whether he had been convicted of a prior felony was not an element of the offense of felony unlawful use of weapons but merely related to the severity of the sentence which may be imposed. The supreme court rejected this argument, stating that in the absence of a prior felony conviction within five years, a "violation of section 24—1(a)(4), * * * is a misdemeanor, while violation of that same section after having been convicted of a felony within the previous 5 years constitutes a felony (sec. 24—1(b))." (*Ostrand*, at 529.) Under these circumstances "it was not only proper to allow the allegation and proof of a prior felony conviction, but it was necessary in order to prove defendant's commission of the felony of carrying a concealed weapon." (*Ostrand*, at 529.) As is apparent from a reading of the opinion in *Ostrand*, proof of a prior felony conviction changes the offense of unlawful use of weapons from a misdemeanor to a felony. Without such proof, conviction of unlawful use of weapons may be punished only as a misdemeanor. Under the Unified Code of Corrections, the presence of aggravating factors does not change the class of offense. *People v. Ramey* (1974), 22 Ill. App. 3d 916, 317 N.E.2d 143, also cited by defendant, is similarly distinguishable in that the existence of a prior theft conviction changes the class of the offense from a misdemeanor to a felony. As the State correctly indicates, the authorities which have considered the very question raised by defendant's argument have answered it contrary to his present position.

■■ In *People v. Butler* (1979), 78 Ill. App. 3d 809, 396 N.E.2d 1374, the defendant was charged with armed robbery. As the court observed, the existence of a prior felony conviction was not a necessary allegation or element to be proved in order to convict him of the robbery. The extended-term statute does not create a separate class of offense. There is no offense of "extended term" robbery. The statute affects only sentencing. In order to impose an extended term it is not necessary that a prior conviction within the same or greater class felony be alleged in the indictment or information or proved as an element of the offense charged. (*Butler*, at 812-14.) Indeed, "[t]o interpret these legislative

provisions otherwise, * * * could result in serious prejudice to defendant's case as there would be the danger of the jury convicting the accused on the basis of the aggravating factors, and not on the crime alleged." (*People v. Gray* (1979), 80 Ill. App. 3d 213, 219, 399 N.E.2d 206; *People v. Mays* (1980), 80 Ill. App. 3d 340, 344, 399 N.E.2d 718.) The extended-term statute does not *require* an increased punishment. Rather, where the aggravating factors are found, the judge *"may* sentence an offender" (emphasis added) to an extended term. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2(a).) As the court said in *Butler*, "such discretionary matters need not be charged in an information." (78 Ill. App. 3d 809, 814.) This distinction was also made in *People v. Racinowski* (1979), 78 Ill. App. 3d 954, 397 N.E.2d 932. There the appellate court held that "[t]here is no constitutional requirement that prior offenses, which may subject a criminal defendant to enhanced penalties under State habitual criminal statutes need be placed in an indictment or information before trial. [Citation.] It is sufficient that a defendant be notified so that he can meet the allegation of prior convictions before the sentencing hearing itself, although if he is represented by counsel, such notice may come soon before the sentencing hearing." (*Racinowski*, at 960.) The statutes involved in the cases cited by defendant "either specifically raise the classification of the crime for a second offense or specifically raise the penalty range to be applied to a second offense. The penalties so provided are not discretionary with the judge. Therefore, under any of them, a prior conviction becomes an element of the offense charged, and must be alleged in the indictment or information." (*Racinowski*, at 961.) Under the extended term provisions of the Code of Corrections, a prior conviction is not an element of the offense charged.

In determining whether the legislature intended that aggravating factors used to enhance a penalty must be pleaded in the indictment or information and proved at trial, it may be noted that in the case of a defendant who enters a plea to a criminal charge, "it shall appear on the record that the plea was entered with the defendant's knowledge that a sentence under this Section was a possibility. If it does not appear on the record, the defendant shall not be subject to such a sentence unless he is first given an opportunity to withdraw his plea without prejudice." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2(b).) As the *Racinowski* court observed, "[t]he fact that the legislature has seen fit to specifically require notice of the possibility of an extended term in the court's admonition before its acceptance of a guilty plea indicates that it considered but rejected a requirement that similar notice be given a defendant who chooses to go to trial." 78 Ill. App. 3d 954, 961-62.

Defendant acknowledges these authorities but argues that they can

no longer be regarded as controlling in light of the supreme court's decision in *People v. Brownell* (1980), 79 Ill. 2d 508, 404 N.E.2d 181. In *Brownell* the defendant argued that he could not be subjected to the death penalty unless the indictment or information charging him with murder formally alleged all of the elements of the offense to be proved against him, particularly the statutory aggravating factor necessary to the imposition of the death sentence. Without this formal allegation, he was charged only with "non-capital" murder and could not be sentenced to death at a hearing in aggravation and mitigation since that would in effect try him again for "capital" murder in violation of Illinois case law and principles of double jeopardy. The supreme court rejected the double jeopardy claim because there is no separate offense of "non-capital" murder in Illinois. And the facts alleged in the murder indictment protected him from reprosecution for the same offense. In regard to Brownell's argument that he was entitled to know at the beginning of the case whether he could potentially receive the death penalty, the court said, "[W]ithout holding that every indictment must contain every aggravating factor which the State will attempt to prove, we hold that, in the indictment involved here, one of the aggravating factors found by the court at the sentencing hearing was sufficiently alleged in the indictment to fulfill the requirements of law." (79 Ill. 2d 508, 524.) An examination of the opinion in *Brownell* reveals that the court was concerned with assuring that a defendant facing the possibility of a death sentence be so apprised at the outset of the trial. The court stated "[T]he indictment sufficiently informed the defendant of the offense against him and, in particular, that he might receive the death sentence."[2] (79 Ill. 2d 508, 525.) *Brownell* does not address the extended term statute, and nothing in the opinion dictates a result contrary to the cases previously cited. Indeed, two decisions handed down after the *Brownell* opinion was filed are in accord with the views expressed in the earlier cases. *People v. Harris* (1980), 83 Ill. App. 3d 1123, 1127, 404 N.E.2d 1020; *People v. Eckles* (1980), 83 Ill. App. 3d 292, 305, 404 N.E.2d 358.

■■ The extended term statute precludes a judge from imposing a term in excess of the maximum unless the "factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present." (Emphasis added.) The latter section uses the disjunctive "or" in specifying the criteria which must be found prior to the imposition of an extended term. Defendant does not dispute that he had previously been convicted in

---

[2] In *Woodson v. North Carolina* (1976), 428 U.S. 280, 305, 49 L. Ed. 2d 944, 961, 96 S. Ct. 2978, 2991, the United States Supreme Court observed that "the penalty of death is qualitatively different from a sentence of imprisonment, however long."

Illinois of the same or greater class felony within 10 years of the present conviction. And there is no dispute that his crime was not accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. In the second part of his argument that the extended term statute was improperly applied to him, defendant contends that the statute creates an ambiguity as to whether proof of facts under only one or both subparts of section 5—5—3.2 is necessary as a condition for imposing an extended term. Because of the rule that criminal statutes are to be strictly construed in favor of the accused (*People v. Lund* (1943), 382 Ill. 213, 46 N.E.2d 929), defendant asserts that this ambiguity must be resolved in his favor by requiring the factors in *both* subparts. Since his crime admittedly did not involve wanton cruelty, defendant contends that the extended term could not be applied. The predicate for defendant's argument is that the use of the plural "factors" in section 5—8—2 refers to both subparts of section 5—5—3.2. The statute has not been so construed. In *People v. Racinowski* the court addressed the question and held that use of the term "factors" does not necessitate a finding of all of the factors listed in subparts (1) and (2) of section 5—5—3.2(b). "Subparts (1) and (2) are clearly connected by the disjunctive 'or.' [Citation.] Subpart (1) has several legal requirements and does not represent but a single factor. The same is true of subpart (2)." (*Racinowski*, at 963; *Butler*, at 817.) Proof of facts under either subpart is sufficient for the imposition of an extended term. *People v. Hamilton* (1980), 81 Ill. App. 3d 297, 302, 401 N.E.2d 318.

For the foregoing reasons we affirm the judgment of the circuit court of Cook County.

Affirmed.

DOWNING and HARTMAN, JJ., concur.