THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROYAL ANTHONY BAILEY, Defendant-Appellant.

First District (1st Division)    Nos. 79-1819, 80-1715 cons.

Opinion filed December 15, 1980.

James J. Doherty, Public Defender, of Chicago (Ina S. Marks and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Royal Anthony Bailey, was convicted by a jury of the shotgun murder of 13-year-old Diana Coleman and sentenced to 40 to 80 years in the penitentiary. He appeals from that conviction and sentence (No. 79-1819). Subsequently, he filed a post-conviction petition which, on

motion of the State, was dismissed. He also appeals from that dismissal (No. 80-1715). His two appeals were consolidated in this court and were submitted on one set of briefs.

Defendant contends (1) the failure of the trial judge to order production of the assistant State's attorney's notes violated the rules of discovery and prejudiced defendant and denied him his rights under the sixth amendment to the Constitution of the United States; (2) he was not proved guilty beyond a reasonable doubt; and (3) the sentence was unduly harsh and denied his rights under the eighth amendment to the Constitution of the United States and under article I, section 11 of the 1970 Illinois Constitution.

No argument is made by defendant in support of his contention in his post-conviction petition that, in violation of the fifth amendment to the Constitution of the United States and of article I, section 10, of the 1970 Illinois Constitution, he was denied his right to remain silent. That contention, therefore, is waived. Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)(7).

On May 16, 1977, Diana Coleman, 13 years old and pregnant, left her home in Chicago at 8 p.m. with her 17-year-old boyfriend, defendant Royal Anthony Bailey. At 9:15 p.m., there was a loud explosion in the vicinity of the Beverly Bowling Alley, located in the 9300 block of South Ashland Avenue. Lee Toper and Tony Brown, who were on the porch of Toper's home with their sisters, heard the noise. Toper's home was on 93rd Place. He immediately walked to the fence at the rear of his backyard at the alley. Looking across the alley, which was lit by street lights, into the parking lot of the bowling alley, he saw a figure walking toward him from the vicinity of an isolated white shack at the far end of the lot. The person entered the alley about 15 yards from Toper, at which time he recognized defendant, whom he had known for several years. Defendant turned and walked down the alley to Toper's left. Toper could see defendant, who was carrying in his left hand a weapon which appeared to be a sawed-off shotgun.

Tony Brown, who had stayed behind to restrain the two sisters from following, joined Toper at the fence when defendant was some distance down the alley. He could not identify the person walking down the alley. Toper told Brown that it was defendant, whom Brown had known for three years. Brown saw that the person was holding a long, dark object in his left hand.

Brown and Toper crossed the alley, walked through the parking lot to the shack and found Diana Coleman, whom they knew, lying several feet from the shack. Diana called to them for help, saying several times, "Anthony Bailey shot me." Her inner organs were protruding from the side of her body. Brown ran back to the house to call the police, while

Toper stayed with Diana. When the police arrived, Officer Harry Wilson, Jr., asked her what had happened; she said, "My boyfriend Anthony Bailey shot me." Diana was taken to Little Company of Mary Hospital, where she died June 8, 1977.

After Diana had been taken to the hospital, defendant was arrested at his nearby home and taken to police headquarters. A search of the parking lot and the area between it and defendant's home turned up no weapon.

The Chief Medical Examiner performed an autopsy on Diana. He testified that death was caused by a "shotgun wound of the abdomen in association with peritonitis and septic shock."

Defendant was interviewed at police headquarters by Michael Sheridan, a felony review assistant State's attorney, who testified that he advised defendant of his *Miranda* rights (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), and that defendant understood them and waived them. Defendant admitted that he was Diana's boyfriend, that he had been with her that evening and that if she was pregnant, it was by him. He further stated that he had walked with her to the parking lot behind the bowling alley and that after a conversation he left her alone and went to rejoin friends. He denied shooting Diana.

Sheridan testified that he made notes of defendant's statements in a felony review work product folder.

Defendant contends that the failure of the trial court to order production of the State's attorney's notes violated the rules of discovery, prejudiced defendant by preventing adequate cross-examination and denied his constitutional rights under the sixth amendment to the Constitution of the United States to confront and cross-examine witnesses against him. We disagree.

On July 5, 1977, defendant was charged by information with the murder of Diana Coleman. At his arraignment on July 7, 1977, defendant pleaded not guilty. On July 11, 1977, he filed a motion for discovery requesting, among other things, "any written or recorded statement or statements and the substance of any oral statements made by the accused." On October 12, 1977, the State filed its answer to discovery, stating in part, "[T]he defendant herein made oral statements to ASA Michael Sheridan on May 16, 1977 at approximately 11:20 p.m. at the 22nd District, Chicago Police Department, contents and circumstances under which they were made will be disclosed upon request." On November 27, 1978, defendant moved to suppress any and all oral statements made by him to assistant State's attorney Michael Sheridan. A hearing was held on this motion on January 8, 1979, immediately preceding the start of the trial.

Michael Sheridan testified that on May 16, 1977, the date of the shooting, he was assigned to the felony review unit and had a conversation with defendant on that date. After advising him of his rights, defendant said he understood those rights and indicated he would talk with him. Sheridan made notations of defendant's statements on a felony review folder. After defendant had made this statement, Sheridan asked him if he wished to give a written statement. Defendant said that he did not. Since that time, Sheridan has had occasion to review those notes. The felony review folder was no longer in his possession, but was in the possession of the assistant State's attorney who was trying the case. Defense counsel requested production of that folder. The State objected on the ground that there was no showing or reason for producing the work product of the assistant State's attorney; there was no showing whether or not it was of an impeaching nature. The objection was sustained. Sheridan also stated that, after reviewing that document, he did not believe he incorporated into it any of the things he had told defendant before he elicited a statement from him. That night it was Sheridan's function as felony review assistant State's attorney to decide what charges would be brought against defendant.

After hearing arguments, the trial court denied the motion to suppress, a jury was then empanelled and the trial was adjourned to the next day.

Before Sheridan testified at the trial, defendant's counsel renewed his request to see the document Sheridan "composed contemporaneously with the taking of the statement from the defendant." He further stated that he had never been furnished with a copy of it, although he had previously requested it. The State resisted this renewed request, stating: Any notes taken that are not a written statement from a witness are the work product of the attorneys. This was not a statement that was taken or typed; nor was it verbatim. His notes summarized the entire transaction with the police officers, conversations with witnesses and his conversation with defendant. It is a work product. The notes are Sheridan's impressions of witnesses and of conversations with officers and other individuals; that is what the work product rule is provided for. The trial court denied defendant's motion.

Sheridan testified as he had at the hearing on the motion to suppress. He then detailed his conversation with defendant. Defendant stated in response to questions: Diana Coleman was his girlfriend. She was pregnant by him. He had seen Diana earlier in the evening of the shooting. He had gone over to her home, left there with her and gone over behind a bowling alley on Beverly Street. Behind the bowling alley, he had a conversation with her; then he left alone, leaving Diana there,

and went over to 95th Street and met some friends. He did not recall what time he had gone over to Diana's house or when he had left her. He said that he had not shot Diana.

Sheridan further testified that at the police station he spoke to two police investigators before he spoke to defendant. It is part of his work in the regular course of his duties as assistant State's attorney in the felony review unit to make reports and submit documents to his office with respect to reviewing the case before placing charges. He makes notes of the conversations he has concerning an investigation. These notes are in a felony review work product folder. In this case his notes concerning his interview with defendant were made approximately one-half to one hour after the interview, when he returned to area headquarters. Those notes remain in the folder. He was sure they would be reviewed by his superior.

Supreme Court Rule 412 (Ill. Rev. Stat. 1977, ch. 110A, par. 412) provides in pertinent part:

"(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

(i) the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements. Upon written motion of defense counsel memoranda reporting or summarizing oral statements shall be examined by the court in camera and if found to be substantially verbatim reports of oral statements shall be disclosed to defense counsel;

(ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements;

＊ ＊ ＊

(j) Matters not subject to disclosure.

(i) *Work product.* Disclosure under this rule and Rule 413 shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the State or members of its legal or investigative staffs, or of defense counsel or his staff."

The State argues that insofar as these notes were concerned with defendant's oral statements, Rule 412(a)(ii) requires only that the State produce the substance of an oral statement, not that it turn over every piece of paper upon which some of that information might be recorded. In addition, the State argues that the felony review folder contained Sheridan's "impressions of conversations with officers and individuals" and were an attorney's work product and were specifically exempted from discovery under Rule 412(j)(i).

Defendant argues that the failure to tender those notes resulted in prejudice in two respects: (1) There were no eyewitnesses to the shooting and, without the notes, there was not an adequate chance to prepare cross-examination of Sheridan to discover if there were any explanatory or clarifying remarks made by defendant or if Sheridan fully remembered the contents of defendant's conversation. The duty to disclose, defendant argues, cannot be evaded by designating them as a work product. (2) The resulting curtailment of cross-examination deprived defendant of an essential right.

In *People v. Grier* (1980), 90 Ill. App. 3d 840, 413 N.E.2d 1316, this court, in speaking of notes taken by an investigator, said:

> "* * * Under Rule 412, which controls disclosure to the accused, the State is required to turn over only those memoranda that contain substantially verbatim reports of their oral statements. Memoranda that report or summarize oral statements cannot be discovered under the Rule unless the trial court determines in an *in camera* examination that the memoranda are 'substantially verbatim reports of oral statements.' The Historical and Practice Notes to the Rules acknowledge this difference. * * *" 90 Ill. App. 3d 840, 848.

There is nothing in the record to show that defendant's counsel made any motion, written or oral, requesting, as required by Rule 412(a)(i), an *in camera* examination by the court of the felony review folder. He merely asked that the folder itself be turned over to him.

In *Grier* the court further held that even if the notes were part of the investigator's work product, "by his taking the stand and testifying as to the conversation on which he took notes, he has waived invocation of the privilege" and that they could be used in an attempt to impeach the investigation. In this case there is nothing in the record to show that Sheridan before testifying used the notes in the felony review folder in order to refresh his recollection. The only document used to refresh his recollection was a transcript of the preliminary hearing. It is only when a document is so used prior to trial that an opponent has a right to examine

the document for purposes of cross-examination. See *People v. Clemons* (1979), 72 Ill. App. 3d 860, 391 N.E.2d 128.

Further, there is no showing that defendant was surprised by the substance of his oral statement as testified to by Sheridan.

■■ The refusal of the trial court to order production of the felony review folder neither violated the rules of discovery nor denied defendant his rights under the sixth amendment to the Constitution to confront and cross-examine witnesses against him.

Defendant's second contention is that, because no witness testified to seeing the shooting, he was not proved guilty beyond a reasonable doubt. He argues that because the evidence was circumstantial the failure to interview Diana in the hospital to have her give "better, more detailed testimony" casts enough doubt to raise a reasonable doubt as to defendant's guilt. We disagree. The evidence set out above was more than sufficient. According to Sheridan, defendant admitted he was in the parking lot with Diana, who was pregnant by him. Toper recognized him walking away with a shotgun. Both Toper and Brown testified that Diana said defendant shot her. She also so stated to the police officer. Diana's statements to Toper and Brown were spontaneous declarations. *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310; *People v. Vinson* (1977), 49 Ill. App. 3d 602, 364 N.E.2d 364.

■■ It is well established that asking the declarant "what happened" is insufficient to destroy the spontaneity of a response. (*People v. Cherry* (1980), 88 Ill. App. 3d 1048, 411 N.E.2d 61; *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25; *People v. Leyva* (1977), 47 Ill. App. 3d 53, 361 N.E.2d 763.) Even if, because of the lapse of time, the statement to the police officer were not a spontaneous declaration, it was merely cumulative. (*Vinson.*) The spontaneous declarations of Diana were sufficient to find defendant guilty beyond a reasonable doubt.

■■ Further, any testimony as to any statement made in the hospital by now deceased Diana would be hearsay. *Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022.

Defendant was properly found guilty beyond a reasonable doubt.

Defendant's final contention is that the 40 to 80 year sentence was unduly harsh for a 17-year-old who had no prior record, totally ignored the rehabilitation potential of the defendant (Ill. Const. 1970, art. I, §11) and constituted cruel and unusual punishment under the eighth amendment to the Constitution of the United States. We disagree.

The imposition of a sentence is clearly a matter of judicial discretion. Absent an abuse of that discretion, a reviewing court will not alter the sentence imposed. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, reaffirming *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■■ The trial court balanced the factors that defendant killed his 13-year-

old girlfriend, who was pregnant with his child, by shooting her in the abdomen with a shotgun and then walked away, and at no time showed any remorse, against the facts of his age of 17, his family background, his lack of a previous criminal record and that, while in prison awaiting trial, he had finished high school. We cannot say that the sentence imposed was an abuse of discretion. It did not violate the Federal and State constitutional guarantees against cruel and unusual punishment.

The sentence and conviction and the dismissal of defendant's post-conviction petition are affirmed.

No. 79-1819—Affirmed.

No. 80-1715—Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.